# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| DEWAYNE BROOKS, SUSAN CAMERON, CHRISTENE JONES, JOSHUA WELLS, individually and on behalf of all others similarly situated, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:24-CV-2940 |
| CENTERPOINT ENERGY, INC., | § § | |
| *Defendant*. | § | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF SETTLEMENT NOTICE, PRELIMINARY APPROVAL OF PLAN OF ALLOCATION, AND SCHEDULING A DATE FOR A <u>FINAL APPROVAL HEARING</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................2

     A.      The Parties and the Proposed Settlement Class ........................................2

     B.      History and Settlement Negotiations .........................................................2

     C.      Claims for Relief .......................................................................................4

     D.      The Proposed Settlement ...........................................................................4

     E.      Class Notice and Administration of Claims ..............................................5

III.    ARGUMENT .......................................................................................................5

     A.      The Proposed Class Meets all Rule 23 Class Certification Requirements ..............5

         1.    Numerosity ......................................................................................6

         2.    Commonality ...................................................................................6

         3.    Typicality ........................................................................................7

         4.    Adequacy ........................................................................................8

             i.      Plaintiffs are adequate Class representatives ...................................9

             ii.     Plaintiffs' Counsel have no conflicts with the Class, are qualified and experienced, and will vigorously prosecute this Action ...................................................................................10

             5.   Both Rule 23(b)(1)(A) and Rule 23(b)(1)(B) are applicable ...................11

     B.      The Settlement Meets All Rule 23 Settlement Approval Requirements ...............13

     C.      The Settlement Satisfies Fifth Circuit Requirements of Fairness and Adequacy .......................................................................................14

         1.    There is no risk of fraud or collusion ...............................................15

2.      The complexity, expense, and likely duration of the litigation
        weighs in favor of Settlement Approval ....................................................15

3.      Plaintiffs conducted enough discovery to understand their strengths
        and weaknesses ..........................................................................................16

4.      The probability of success on the merits and range of possible
        recovery warrants approval (Factors 4 and 5)............................................17

5.      Counsel for the Parties and Plaintiffs find the Settlement to be fair
        and adequate...............................................................................................19

D.      The proposed class notice plan should be approved by the Court........................19

IV.     CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Angell v. GEICO Advantage Ins. Co.*,
67 F.4th 727 (5th Cir. 2023).................................................................................................8

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004)...............................................................................................16

*Baird v. BlackRock Institutional Trust Co. N.A.*,
No. 17-cv-01892, 2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ........................................18

*Barcenas v. Rush University Med. Ctr.*,
No. 22-cv-00366 (N.D. Ill. Jan. 19, 2023) .........................................................................6

*Bardales v. Fontana & Fontana, LLC*,
No. 19-cv-340, 2020 WL 5819873 (E.D. La. Sept. 30, 2020) ..........................................20

*Beach v. JPMorgan Chase Bank, N.A.*,
No. 17-cv-563, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) ..........................................10

*Blackmon v. Zachary Holdings, Inc.*,
No. 20-cv-00988, 2022 WL 3142362 (W.D. Tex. Aug. 5, 2022),
*judgment entered*,
No. 20-cv-00988, 2022 WL 3142364 (W.D. Tex. Aug. 5, 2022)......................15, 18, 19

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) .......................................................................................17

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
No. 11-cv-1363, 2012 WL 92498 (E.D. La. Jan. 10, 2012)................................................1

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982)...............................................................................................17

*Cleven v. Mid-Am. Apartment Cmtys., Inc.*,
328 F.R.D. 452 (W.D. Tex. 2018) .......................................................................................6

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977).............................................................................................16

*Davis v. Magna Int'l of Am., Inc.*,
No. 20-cv-11060, 2025 WL 732300 (E.D. Mich. Jan. 27, 2025)......................................11

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ........................................................................6, 7, 9

*Diaz v. BTG Int'l Inc.*,
19-cv-1664, 2021 WL 2414580 (E.D. Pa. June 14, 2021) ..........................................10

*Feder v. Elec. Data Sys. Corp.*,
429 F.3d 125 (5th Cir. 2005) ...............................................................................6, 9

*Fuller v. SunTrust Banks, Inc.*,
No. 11-cv-784, 2018 WL 3949698 (N.D. Ga. June 27, 2018) ....................................9

*Harmon v. Shell Oil Co.*,
No. 20-cv-00021, 2023 WL 5758889 (S.D. Tex. Sept. 6, 2023) ................................12

*Hawkins v. Cintas Corp.*,
No. 19-cv-1062, 2025 WL 523909 (S.D. Ohio Feb. 18, 2025) ...................................11

*Henderson v. Emory Univ.*,
No. 16-cv-2920, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) ..................................9

*Ictech-Bendeck v. Waste Connections Bayou, Inc.*,
No. 18-cv-889, 2024 WL 5186589 (E.D. La. Dec. 20, 2024) .....................................1

*John v. Nat'l Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) ................................................................................6

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
No. 16-cv-03698, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ...............................18

*Jones v. Novastar Financial, Inc.*,
257 F.R.D. 181 (W.D. Mo. 2009) ...............................................................12, 16, 17

*Karpik v. Huntington Bancshares Inc.*,
No. 17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ....................7, 8, 11, 19

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010), *as modified* (June 14, 2010),
*judgment entered* (June 18, 2010), *enforcement denied*,
No. 03-cv-102, 2011 WL 2413318 (N.D. Tex. June 15, 2011) ..........................*Passim*

*Krueger v. Ameriprise Fin., Inc.*,
304 F.R.D. 559 (D. Minn. 2014) .................................................10, 11, 12,15

*Kruger v. Novant Health, Inc.*,
No. 14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016 ..................................16

*LaLonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004) ...................................................................................15

*McWhorter v. Serv. Corp. Int'l*,
No. 22-cv-02256, 2024 WL 4165074 (S.D. Tex. Sept. 11, 2024)...........................................11, 12

*M.D. v. Perry*,
294 F.R.D. 7 (S.D. Tex. 2013) ...........................................................................10

*Mehling v. New York Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007) ...................................................................12, 18

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ...............................................................................6

*Nesbeth v. ICON Clinical Rsch. LLC*,
No. 21-cv-1444, 2022 WL 22893879 (E.D. Pa. Mar. 10, 2022)...................................10

*In Re Nortel Networks Corp. ERISA Litig.*,
No. 03-md-01537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009)................................8

*O'Donnell v. Harris Cnty., Texas*,
No. 16-cv-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ...................................18

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ...........................................................................17

*Perkins v. United Surgical Partners*,
No. 23-cv-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024)...........................10, 11, 17

*In re Pool Products Distribution Market Antitrust Litigation*,
310 F.R.D. 300 (E.D. La. 2015)...........................................................................17

*Purdie v. Ace Cash Express, Inc.*,
No. 01-cv-1754, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003)................................14

*Reed v. General Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ...............................................................14, 15, 16, 19

*Sims v. BB&T Corp.*,
No. 15-cv-732, 2019 WL 1995314 (M.D.N.C. May 6, 2019)......................................18

*Slade v. Progressive Sec. Ins. Co.*,
856 F.3d 408 (5th Cir. 2017) ...............................................................................9

*Spence v. Am. Airlines, Inc.*,
No. 23-cv-00552, 2024 WL 3635309 (N.D. Tex. May 22, 2024)..................................................8

*Stengl v. L3Harris Technologies*,
No. 22-cv-572, 2023 WL 11932263 (M.D. Fla. June 5, 2023)....................................................7

*Stirman v. Exxon Corp.*,
280 F.3d 554 (5th Cir. 2002) ......................................................................................................8

*Sweet v. Advance Auto Stores Co., Inc.*,
No. 21-cv-549, 2023 WL 3959779 (W.D. Va. June 12, 2023)...................................................11

*Tatum v. R.J. Reynolds Tobacco Co.*,
254 F.R.D. 59 (M.D.N.C. 2008) ...............................................................................................12

*Tracey v. MIT*,
No. 16-cv-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018).................................................9

*Wachala v. Astella US LLC*,
No. 20-cv-3882, 2022 WL 408108 (N.D. Ill. Feb. 10, 2022) .....................................................7

*Waldner v. Natixis Inv. Managers, L.P.*,
No. 21-cv-10273, 2023 WL 3466272 (D. Mass. Mar. 24, 2023),
*R. & R. adopted*,
No. 21-cv-10273, 2023 WL 3467112 (D. Mass. May 15, 2023)...............................................12

*Wal-Mart Stores Inc. v. Dukes*,
564 U.S. 338 (2011) ....................................................................................................................7

### STATUTES

28 U.S.C. §§ 1332(d), 1435, 1711-1715 ......................................................................................20

29 U.S.C. § 1104(a) .......................................................................................................................2

FED. R. CIV. P. 23 ............................................................................................................5, 6, 8, 13

FED. R. CIV. P. 23(a).....................................................................................................................1, 5

FED. R. CIV. P. 23(a)(2) ..................................................................................................................6

FED. R. CIV. P. 23(a)(4) ................................................................................................................10

FED. R. CIV. P. 23(b) ......................................................................................................................1

FED. R. CIV. P. 23(b)(1) ...............................................................................................................13

FED. R. CIV. P. 23(b)(1)(A)................................................................................11, 12

FED. R. CIV. P. 23(b)(1)(B)...........................................................................11, 12, 13

FED. R. CIV. P. 23(e)..............................................................................................13

FED. R. CIV. P. 23(e)(1)(B)......................................................................................13

FED. R. CIV. P. 23(e)(1)(C)......................................................................................14

FED. R. CIV. P. 23(e)(2)......................................................................................13, 14

FED. R. CIV. P. 23(e)(3)...........................................................................................13

FED. R. CIV. P. 23(g)..............................................................................................10

**Other Sources**

Class Action Fairness Act of 2005 ("CAFA") ....................................................... 20

Employee Retirement Income Security Act of 1974 ............................................*Passim*

## I.    INTRODUCTION

Dewayne Brooks, Susan Cameron, Christene Jones, and Joshua Wells, (collectively "Plaintiffs"), on behalf of the CenterPoint Energy Savings Plan (the "Plan"), respectfully submit this Memorandum of Law in support of their unopposed motion for preliminary approval of the proposed Settlement of this Employee Retirement Income Security Act of 1974 (ERISA) class action. The Parties[1] are pleased that after years of hard-fought litigation, they are able to present for preliminary approval a proposed settlement of a cash payment of $800,000 (eight hundred thousand dollars). Plaintiffs believe this is an excellent result which represents 20 to 22% of the best-case damages scenario as estimated by Plaintiffs, which is further explained below. The Parties agreed to the proposed Settlement after significant discovery and the exchange of numerous arguments and potential liability and damages scenarios.

At this stage, "[t]he Court must make a preliminary determination that (1) the proposed settlement class satisfies criteria in Rules 23(a) and 23(b), that (2) the terms of the proposed settlement agreement are fair, reasonable, and adequate, and (3) the Court 'must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.'" *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-cv-889, 2024 WL 5186589, at *5 (E.D. La. Dec. 20, 2024) (quoting *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 11-cv-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012)). Preliminary approval is appropriate here. Plaintiffs believe the Settlement is an excellent result, providing a substantial, immediate payment to Settlement Class members and eliminating the risks and costs of further litigation. A trial could result in a reduced recovery or no recovery at all. As set forth below, the

---

[1] As used herein, "Parties" refers to "Settling Parties" which is defined in the Settlement Agreement as CenterPoint Energy, Inc. ("Defendant") and the Plaintiffs, on behalf of themselves, the Plan, and the Settlement Class members.

Settlement is fair, reasonable, and adequate under Fifth Circuit law, and the proposed Class Notice

Plan satisfies due process.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties and the Proposed Settlement Class

Plaintiffs are/were participants in  the  Plan. *See* First Amended Complaint ("FAC") (ECF

27), ¶¶ 15-19. The Settlement Class is defined as:

> All persons who were participants in or beneficiaries of the Plan at
> any time during the Class Period, including any Beneficiary of a
> deceased Person who participated in the Plan in the Class Period and
> any Alternate Payee of a Person subject to a QDRO who participated
> in the Plan during the Class Period. Excluded from the Settlement
> Class are Defendant, members of the Board of Directors of
> CenterPoint Energy, Inc. ("Board of Directors"), and members of
> the Benefits Committee of CenterPoint Energy, Inc. ("Benefits
> Committee") who were participants in or beneficiaries of the Plan at
> any time during the Class Period.

Settlement Agreement., ¶ 1.44.

Class Period" means August 7, 2018, through the date the Preliminary Approval Order is

entered. *Id.*, ¶ 1.15.

### B.    History and Settlement Negotiations[2]

Plaintiffs commenced this action by filing a complaint on August 7, 2024. *See* ECF No. 1.

The Complaint alleged violations of the fiduciary duty of prudence imposed by ERISA § 404(a),

29 U.S.C. § 1104(a). For several months before filing the original complaint, Plaintiffs conducted

an in-depth investigation of Plaintiffs' claims, including by evaluating Plaintiffs' Plan documents,

public filings, and engaged consulting experts. *See* Gyandoh Decl., ¶ 3. On August 3, 2023, prior

to filing suit, Plaintiffs requested numerous documents and information from Defendant pursuant

---

[2] The full history of this matter is recounted in the Declaration of Mark K. Gyandoh ("Gyandoh
Decl."), filed contemporaneously with this memorandum, at ¶¶ 3-28.

to Section 104(b)(4) of ERISA. FAC, ¶ 69. On September 27, 2024, the Parties filed a joint stipulation wherein Plaintiffs agreed to voluntarily dismiss the Board of Directors of CenterPoint Energy, Inc. ("Board of Directors"), the Benefits Committee of CenterPoint Energy, Inc. ("Benefits Committee"), and John Does 1-10, as Defendants. *See* ECF No. 13; *see also* ECF No. 15 (this Court adopting the stipulation). CenterPoint Energy, Inc., remains the sole Defendant in this action.

On October 28, 2024, Defendant requested a pre-motion conference regarding its intent to file a motion to dismiss the original complaint, therein arguing several purported issues with the pleadings. *See* ECF No. 16. On November 1, 2024, Judge Palermo denied Defendant's request, and granted Plaintiffs leave to amend. ECF No. 24. Subsequently, Plaintiffs filed the FAC on November 22, 2024. Defendant filed and served its Sealed Motion to Dismiss Plaintiffs' First Amended Complaint on December 6, 2024. *See* ECF No. 28; *see also* ECF No. 30 (redacted version filed on the same date). Plaintiffs filed their Brief in Opposition to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint on January 10, 2025. *See* ECF No. 34. On January 24, 2025, Defendants filed their Reply. *See* ECF No. 35.

While Defendant's Motion to Dismiss was pending, the Parties began fact discovery. Specifically, the Parties began exchanging document discovery and depositions were scheduled, including Defendant's 30(b)(6) corporate designee deposition. *See* Gyandoh Decl., ¶¶ 10-19. On June 12, 2025, pursuant to F.R.E. 408 and Local Rule 16.3 (which urges parties to make good-faith efforts to settle at the earliest possible time), Class Counsel spoke with counsel for Defendant regarding the potential for a settlement. *Id.*, ¶ 20. On June 27, 2025, Plaintiffs sent Defendant their opening settlement demand. *Id.*, ¶ 21. Counsel for the Parties had a call regarding settlement on August 21, 2025. *Id.*, ¶ 23. The following day, August 22, 2025, the Parties had another call to further negotiate a settlement, discussing terms and potential scenarios. *Id.*, ¶ 24. Another call,

with another counteroffer, was held on September 4, 2025. *Id*., ¶ 25. An agreement in principle was reached on September 5, 2025. *Id*., ¶ 26. On September 8, 2025, the Parties informed the Court that a settlement in principle was reached and proposed that the Court vacate all pending deadlines while the Parties finalized the details and prepared the preliminary approval paperwork for the Court to review. *See* ECF No., 45.

### C.    Claims for Relief

Plaintiffs' claims concern Defendant's alleged breaches of fiduciary duties as Plan fiduciaries by, *inter alia*, failing to actively monitor the Plan's recordkeeping and administrative fees including the Plan's Professional Management service, an account management service. *See* FAC, ¶¶ 9, 99-136. The claims alleged in the Amended Complaint are as follows:

COUNT I: Breaches of Fiduciary Duty of Prudence

COUNT II: Failure to Adequately Monitor Other Fiduciaries

Defendant denies all claims and denies that it ever engaged in any wrongful conduct.

### D.    The Proposed Settlement

The Settlement provides that Defendant and/or its insurer will pay a total maximum amount of $800,000.00 into a Qualified Settlement Fund to be allocated to Class Members pursuant to a Court-approved Plan of Allocation. The Plan of Allocation, attached to the Settlement Agreement as Exhibit C, is premised on calculating a Plan participant's *pro rata* distribution based upon the individual's balances in the Plan during the Class Period. *See* Gyandoh Decl., ¶ 29. In exchange, Plaintiffs and the Plan will dismiss their claims, as set forth more fully in the Settlement Agreement. The Gross Settlement Amount is inclusive of an attorney fees award not to exceed one third of the Gross Settlement Amount. Put differently, the attorney fee award cannot exceed $266,666.67. *See* Settlement Agreement, ¶ 61. The Settlement Agreement also provides for a

reimbursement of attorney expenses fees reasonably advanced in this litigation, and a maximum of $5,000.00 incentive awards for each of the Class Representatives (Plaintiffs) for their work in bringing the case forward. *Id*. These awards are subject to Court approval. Plaintiffs' Counsel believes this is a fair and adequate Settlement.

### E.    Class Notice and Administration of Claims

Plaintiffs have selected Analytics Consulting LLC ("Analytics") to be the Settlement Administrator. Analytics is experienced in class action claims administration. Upon preliminary approval, Analytics will mail, by first class mail, the Court-approved Short Form Postcard Settlement Notice (or "Notice") to Settlement Class members using addresses from documents associated with the Plan. A more comprehensive summary of the litigation and settlement is described in the Long Form Settlement Notice that will be posted to the Settlement Website. *See* Settlement Agreement, ¶ 1.46.

Analytics will administer a skip trace and receive updated address information for any Notices that are returned for lack of a forwarding address and re-mail the Notices to the updated addresses. Additionally, the above-mentioned Settlement Website will provide Settlement Class members with important case documents, pertinent information, and contact information for the Settlement Administrator, Class counsel, and Defense counsel. Lastly, Analytics will institute a case-specific toll-free number for members to listen to an Interactive Voice Response system or speak with a live agent. The Notice, Long Form Notice, website, and telephone number will inform Settlement Class members of their rights to object, deadline to object, their inability to opt-out, Plaintiffs' case contribution awards, and Class Counsel's request for attorney's fees and expenses.

## III.   ARGUMENT

### A.    The Proposed Class Meets all Rule 23 Class Certification Requirements

Plaintiffs and Class Counsel, Capozzi Adler P.C. ("Capozzi Adler"), respectively request that this Court certify a Class for Settlement Purposes. "Rule 23(a) provides four prerequisites to a class action: '(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class').'" *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005) (citation omitted). These requirements are met here.

### 1.    Numerosity

Here, the Class consists of over 11,990 Plan participants, making joinder impracticable. *See* FAC, ¶ 28 (citing Department of Labor 2023 Form 5500 at 2). Hence, numerosity is satisfied because "[t]housands of proposed class members [] far exceeds the range that generally satisfies the numerosity requirement in the Fifth Circuit." *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, 328 F.R.D. 452, 459 (W.D. Tex. 2018) (citing *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999)). Also, "the Fifth Circuit has interpreted Rule 23 to include an implied prerequisite that the proposed class must be ascertainable." *Id.*, at 458 (citing *John v. Nat'l Sec. Fire & Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007)). Undoubtedly, the "the Settlement Class is ascertainable from records kept with respect to the Plan and from other objective criteria." *Barcenas v. Rush University Med. Ctr.*, No. 22-cv-00366, Slip Op. at 2 (N.D. Ill. Jan. 19, 2023).

### 2.    Commonality

"To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). In ERISA cases involving defined-contribution plans, commonality "is easily satisfied" because "fund participants operate against a

common background, and allegations that a fiduciary has breached its duties in the selection of investment options describe a problem that operates across the plan rather than at the individual level.'" *Wachala v. Astella US LLC*, No. 20-cv-3882, 2022 WL 408108, at *5 (N.D. Ill. Feb. 10, 2022) (internal citations omitted). Although only "a single common question" will suffice, here there are several questions of law and fact that are common to the Settlement Class members as participants of the Plan. *In re Deepwater Horizon*, 739 F.3d at 811 (quoting *Wal-Mart Stores Inc. v. Dukes,* 564 U.S. 338, 358 (2011)). The FAC raises the following common questions:

    A.    Whether Defendant is/was fiduciaries of the Plan;

    B.    Whether Defendant breached its fiduciary duties of prudence by engaging in the conduct described herein;

    C.    Whether the Defendant failed to adequately monitor the Committee and other fiduciaries to ensure the Plan was being managed in compliance with ERISA;

    D.    The proper form of equitable and injunctive relief; and

    E.    The proper measure of monetary relief.

FAC, ¶ 30. Thus, commonality is satisfied. *See, e.g., Karpik v. Huntington Bancshares Inc.,* No. 17-cv-1153, 2021 WL 757123 at *10 (S.D. Ohio Feb. 18, 2021) (collecting approved ERISA class certifications pursuing answers to the same or similar common questions); *Stengl v. L3Harris Technologies*, No. 22-cv-572, 2023 WL 11932263, at *2 (M.D. Fla. June 5, 2023) ("a common question exists as to whether Defendants breached ERISA's duty of prudence in connection with […] monitoring the compensation paid for recordkeeping and administration services.").

### 3.    Typicality

"Typicality 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent[;]" however, only the "essential

characteristics" need to be similar. *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). Typicality is satisfied in the instant case because Plaintiffs' "claims arise from a similar course of conduct and share the same legal theory [and any] factual differences will not defeat typicality." *Id.* (quoting *Stirman*, 280 F.3d at 562). In particular, Defendant managed the Plan as a single entity. Therefore, Plaintiffs were subject to the same treatment as other Plan participants included in the Class, and Plaintiffs advance the same legal theories regarding Defendant's failure to adequately monitor the Plan's fees, investments, and its appointed fiduciaries. *See* FAC, ¶ 9. Plaintiffs and their fellow Plan members seek the same damages, meaning restoration of assets to the Plan and participant accounts. "Indeed, the fact that Plaintiffs brought the claims on behalf of the Plan 'weigh[s] heavily in a Rule 23(a)(3) analysis of the parties' claims and defenses.'" *Karpik*, 2021 WL 757123 at *11 (quoting *In Re Nortel Networks Corp. ERISA Litig.*, No. 03-md-01537, 2009 WL 3294827, at *8 (M.D. Tenn. Sept. 2, 2009)); *see also  v. Am. Airlines, Inc.*, No. 23-cv-00552, 2024 WL 3635309, at *7 (N.D. Tex. May 22, 2024) ("By the very nature of claims and underlying misconduct alleged, Plaintiff's claims arise from the same course of events and turn on the same legal issues as the claims of class members: the [D]efendant[s'] alleged breach of fiduciary duty harming the Plan.").

### 4.    Adequacy

Plaintiffs and Class Counsel satisfy all three requirements laid out by Rule 23: "(1) the zeal and competence of the representatives' counsel"; "(2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees"; and "(3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (cleaned up) (citing *Feder*, 429 F.3d at 130). Both Plaintiffs and Counsel provide adequate representation.

### i.        Plaintiffs are adequate Class representatives

Plaintiffs have proven to be adequate representatives thus far and will continue to represent the Class zealously. Each Plaintiff has provided documents, remained in contact with Class Counsel, reviewed the terms of the Settlement, and testified to their continuing dedication to serving as a representatives of the Class and their understanding of this litigation. *See* Gyandoh Decl., ¶¶ 14, 46-53. Courts have found that plaintiffs' declarations sufficiently demonstrate adequacy. *See, e.g., In re Deepwater Horizon*, 739 F.3d at 813 (upholding the district court's reliance on the plaintiffs' declarations); *Stengl*, 2023 WL 11932263, at *2 ("Plaintiffs further submit declarations of each Plaintiff confirming their understanding of their duties to take all necessary steps to protect the interests of the Class."); *Henderson v. Emory Univ.*, No. 16-cv-2920, 2018 WL 6332343, at *7 (N.D. Ga. Sept. 13, 2018) (same); *Fuller v. SunTrust Banks, Inc.*, No. 11-cv-784, 2018 WL 3949698, at *6 (N.D. Ga. June 27, 2018) ("Although the affidavits are pro forma documents prepared by counsel, each Plaintiff signed at the bottom acknowledging that the affidavit contained their true contentions.").

The "adequacy inquiry also 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Feder*, 429 F.3d at 130 (citations omitted). Here, Plaintiffs do not have any conflicts with the class, particularly because they are bringing this suit on behalf of the Plan. Put differently, "because the crux" of ERISA breach of fiduciary duty cases, "hinges on whether defendants acted imprudently with respect to the Plan and not the investments of individual participants, this Court [should] find[] no substantial intra-class conflict in the proposed class." *Tracey v. MIT*, No. 16-cv-11620, 2018 WL 5114167, at *6 (D. Mass. Oct. 19, 2018); *see also Beach v. JPMorgan Chase Bank, N.A.*, No. 17-cv-563, 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (similar); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575 (D. Minn. 2014) (similar).

9

ii.    **Plaintiffs' Counsel have no conflicts with the Class, are qualified
and experienced, and will vigorously prosecute this Action**

The inquiry into the adequacy of class counsel under Rule 23(a)(4) is intertwined with the factors set forth in Rule 23(g). *See M.D. v. Perry*, 294 F.R.D. 7, 46, 66 (S.D. Tex. 2013). Rule 23(g) is satisfied when class counsel has done adequate work in "'identifying or investigating potential claims[,]'" has "'experience in handling class actions, other complex litigation, and the types of claims asserted in the action'" and "have demonstrated familiarity with the applicable law and dedication to this case" including "devot[ing] substantial resources." *Id.*, at 66 (quoting Rule 23(g)). That is precisely the case here. Capozzi Adler and the undersigned counsel exercised their extensive experience and knowledge of ERISA matters at every stage of this litigation, including the prefiling investigation and formal discovery, achieving Class Certification, and achieving a Settlement. Mark K. Gyandoh is a partner and chair of the Fiduciary Practice Group at Capozzi Adler and has been litigating ERISA fiduciary breach lawsuits for 20 years. *See* Gyandoh Decl., ¶ 36. In fact, Mr. Gyandoh successfully appealed a motion to dismiss decision in a substantially similar excessive recordkeeping fee case in this Circuit. *See Perkins v. United Surgical Partners Int'l, Inc.*, No. 23-cv-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024) (reversing dismissal of ERISA excessive fee action). He and Capozzi Adler currently serve as counsel in over two dozen fiduciary breach actions across the country. *See* Gyandoh Decl., ¶ 41; *see e.g., Nesbeth v. ICON Clinical Rsch. LLC*, No. 21-cv-1444, 2022 WL 22893879, at *4 (E.D. Pa. Mar. 10, 2022) (Capozzi Adler "has extensive experience and has worked diligently to litigate Plaintiffs' claims."); *Diaz v. BTG Int'l Inc.*, 19-cv-1664, 2021 WL 2414580, at *8 (E.D. Pa. June 14, 2021) (appointing the undersigned as settlement Class Counsel in an ERISA case and stating that we "appear well qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement."); *Hawkins v. Cintas Corp.*, No. 19-cv-1062, 2025 WL 523909, at *3 (S.D. Ohio

Feb. 18, 2025) ("Capozzi Adler has been appointed Class Counsel in several ERISA breach of fiduciary duty cases similar to the instant case."); *Davis v. Magna Int'l of Am., Inc.*, No. 20-cv-11060, 2025 WL 732300, at *3 (E.D. Mich. Jan. 27, 2025) (same); *Sweet v. Advance Auto Stores Co., Inc.*, No. 21-cv-549, 2023 WL 3959779, at *2 (W.D. Va. June 12, 2023) (noting the undersigned has "years of experience litigating ERISA breach of fiduciary duty claims."). Class Counsel conducted a thorough pre-filing investigation in this case, conducted discovery, and successfully obtained a Settlement. Gyandoh Decl., at ¶¶ 3-28. Co-Counsel for the Class, Peter Muhic of Muhic Law LLC, is an accomplished trial lawyer who has tried complex cases to verdict in federal and state courts throughout the country and has extensive experience in ERISA litigation. *Id.*, ¶ 39. Mr. Muhic is a graduate of Temple University School of Law. *See* biography at https://muhiclaw.com/. Accordingly, appointing Capozzi Adler as Class Counsel is warranted.

Thus, Counsel and Plaintiffs have fairly and adequately represented the proposed class.

### 5.    Both Rule 23(b)(1)(A) and Rule 23(b)(1)(B) are applicable

Certification under Rule 23(b)(1) is routinely granted in ERISA class action cases. Within the past week, another court in this District granted final approval of an ERISA case involving allegedly excessive recordkeeping fees and certified a class "[f]or purposes of Settlement, and pursuant to Rules 23(a) and (b)(1) of the Federal Rules of Civil Procedure." *Perkins v. United Surgical Partners International Inc*., 3:21-cv-00973 (N.D. Tex. Oct. 30 2025) (ECF No. 83), ¶ 2; *see also McWhorter v. Serv. Corp. Int'l*, No. 22-cv-02256, 2024 WL 4165074, at *15-16 (S.D. Tex. Sept. 11, 2024) ("Certification under Rule 23(b)(1)(A) or (B) is [] frequently found to be appropriate for claims like those asserted here under ERISA.") (listing cases); *see also Karpik*, 2021 WL 757123 at *12 ("Cases such as this, which involve allegations of fiduciary breaches to a trust or plan, are precisely the type of cases that are encompassed by the rule."). The Advisory

Committee Notes to Rule 23 instruct that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." FED. R. CIV. P. 23(b)(1)(B), Advisory Committee's Note (1966 Amendment). Indeed, courts routinely certify classes under Rule 23(b)(1)(B) in analogous cases alleging breaches of fiduciary duties to defined contribution plans. *See*, *e.g.*, *Waldner v. Natixis Inv. Managers, L.P.*, No. 21-cv-10273, 2023 WL 3466272, at *19 (D. Mass. Mar. 24, 2023), *R. & R. adopted*, No. 21-cv-10273, 2023 WL 3467112 (D. Mass. May 15, 2023); *Tatum v. R.J. Reynolds Tobacco Co*., 254 F.R.D. 59, 67 (M.D.N.C. 2008); *Krueger*, 304 F.R.D. at 578; *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 478 (E.D. Pa. 2007).

The Class may also be certified under Rule 23(b)(1)(A) because "a central element of plaintiffs' claims are not an individual matter; here the central questions concerning whether the fiduciaries breached their duties to the Plan are not individual." *Jones v. Novastar Financial, Inc*., 257 F.R.D. 181, 194 (W.D. Mo. 2009); *see also McWhorter*, 2024 WL 4165074, at **15-16 ("[Plaintiffs] seek Plan-wide relief. Because this is so, allowing various, individual participants to pursue separate actions could result in conflicting standards for Defendants in operating the Plan, which would no doubt prove untenable in practice."); *Harmon v. Shell Oil Co*., No. 20-cv-00021, 2023 WL 5758889, at *8 (S.D. Tex. Sept. 6, 2023) (certifying recordkeeping fee claim under 23(b)(1)(A) because of risk of inconsistent judgments across individual cases that would result in "conflicting and incompatible standards of conduct" for the plan administrator).

Accordingly, Class Certification is appropriate because the Rule 23(b)(1) requirements have been met.

### B.    The Settlement Meets All Rule 23 Settlement Approval Requirements

Pursuant to FED. R. CIV. P. 23(e), at the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies factors the court must ultimately consider at the final approval stage:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3)[3]; and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Here, as discussed above (1) the settlement was negotiated at arm's length involving several rounds of negotiations and phone calls, (2) the Settlement Class was adequately represented by Plaintiffs and Class Counsel, and (3) the relief provided is adequate and equitable to all Settlement Class members as the proposed Plan of Allocation provides for a *pro rata* distribution to each qualified Settlement Class member. In addition, the Settlement Agreement

---

[3] Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). There are no agreements, other than the Settlement itself, in this case.

13

ensures a substantial and prompt payment to the Plan for current participants. Former Participants will also receive payment via a check issued by the Settlement Administrator. This substantial relief is far preferable to the possibility of a smaller recovery or none at all. In short, the proposed Settlement is an excellent result and merits preliminary approval. As detailed in the next section, the Fifth Circuit has also enumerated factors that encompass the scope of the Fed. R. Civ. P. 23(e)(2) factors described above, and which Plaintiffs satisfy.

### C.    The Settlement Satisfies Fifth Circuit Requirements of Fairness and Adequacy

In determining if a preliminary settlement satisfies FED. R. CIV. P. 23(e)(1)(C), the Fifth Circuit evaluates six "*Reed* Factors":

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Klein v. O'Neal, Inc*., 705 F. Supp. 2d 632, 649–50 (N.D. Tex. 2010), *as modified* (June 14, 2010), *judgment entered* (June 18, 2010), *enforcement denied*, No. 03-cv-102, 2011 WL 2413318 (N.D. Tex. June 15, 2011) (quoting *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983)).

However, "[w]hen considering these factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc*., No. 01-cv-1754, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). "Although the court must weigh the facts and law of the case to determine the fairness of the settlement, this does not mean that the court should reach conclusions as to the ultimate merits of the claims or defenses." *Klein*, 705 F. Supp. 2d at 648. The six *Reed* Factors weigh heavily in favor of Settlement approval.

### 1.    There is no risk of fraud or collusion

Courts within the Fifth Circuit "adhere to a strong presumption that an arm's length class action settlement is fair—especially when doing so will result in significant economies of judicial resources." *Klein*, 705 F. Supp. 2d at 650. Settlement discussions began on June 12, after the Parties exchanged significant document discovery. On June 27, 2025, Plaintiffs sent Defendant a settlement demand with supporting details, and good faith negotiations ensued. Gyandoh Decl., ¶¶ 21-26. The negotiations lasted nearly two months and involved several rounds of counterproposals. *Id*. Hence, the resulting proposed Settlement is the product of arm's length, informed negotiations without fraud or collusion.

### 2.    The complexity, expense, and likely duration of the litigation weighs in favor of Settlement approval

The second *Reed* Factor weighs in favor of preliminary approval because "ERISA litigation is notoriously complex." *Blackmon v. Zachary Holdings, Inc.*, No. 20-cv-00988, 2022 WL 3142362, at *5 (W.D. Tex. Aug. 5, 2022), *judgment entered*, No. 20-cv-00988, 2022 WL 3142364 (W.D. Tex. Aug. 5, 2022); *see also Krueger v. Ameriprise*, No. 11–cv–02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) ("ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation."); *LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004) (describing ERISA jurisprudence as an "important and complex area of law" that "is neither mature nor uniform. . ."). Like in *Blackmon*, "the proposed settlement mitigates the significant risks and expenses associated with the continued litigation of a complex ERISA trial, thereby avoiding years of additional delay and uncertain outcomes and the possibility of lesser recovery to Plan participants." *Blackmon*, 2022 WL 3142362, at *1. Here, in the absence of a settlement, the Parties would continue with costly discovery, dispositive motion practice, depositions, trial and likely appeals. The likely appeal from a trial would exacerbate the expense, duration, and

complexity of the litigation to the detriment of the Plaintiffs. Accordingly, now is an ideal stage for settlement.

### 3.    Plaintiffs conducted enough discovery to understand their strengths and weaknesses

"Under the third *Reed* factor, the court […] evaluates whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Klein*, 705 F. Supp. 2d at 653 (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). As the Fifth Circuit Court of Appeals has instructed, a "lack of discovery is not necessarily fatal to a settlement agreement, provided the parties demonstrate the case 'cannot be characterized as an instance of the unscrupulous leading the blind.'" *Jones*, 865 F.3d at 300 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977)); *see also Klein*, 705 F. Supp. 2d at 653 ("[a] settlement can be approved under this factor even if the parties have not conducted much formal discovery.").

Formal discovery was underway went the Settlement was reached, and there was ample informal discovery and consulting expert guidance prior to filing this suit. *See* Gyandoh Decl., ¶¶ 8-19. In *Kruger v. Novant Health, Inc.*, another ERISA breach of fiduciary duty case, the court lauded the amount of informal discovery work that the ERISA class counsel undertook before filing similar complaints, including "meeting with the Plans' participants, obtaining documents from public sources and the Retirement [] Plan administrator, reviewing and analyzing plan documents and financial statements, building on expertise regarding industry practices, conducting extensive legal research, and fashioning the causes of action." *Kruger,* No. 14-cv-208, 2016 WL 6769066, *3 (M.D.N.C. Sept. 29, 2016). Class Counsel conducted the same rigorous work here. Furthermore, counsel for both parties have sufficient experience in ERISA breach of fiduciary duty cases to evaluate the discovery produced and determine a fair settlement amount in light of the attendant risks and costs of continued litigation. *See Jones*, 865 F.3d at 300 ("[I]f experienced

counsel reached this settlement, the court may trust that the terms are reasonable in ways that it might not had the settlement been reached by lawyers with less experience in class action litigation.").

In sum, Plaintiffs had ample information to understand the strengths and weaknesses of their case, and this factor weighs in favor of preliminary approval.

### 4. The probability of success on the merits and range of possible recovery warrants approval (Factors 4 and 5)

"In balancing the six factors, 'absent fraud or collusion, the most important factor is the probability of the plaintiffs' success on the merits.'" *Klein*, 705 F. Supp. 2d at 649–50 (quoting *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). However, "this does not mean that the court should reach conclusions as to the ultimate merits of the claims or defenses" because the "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval." *Id.* at 648-49. "'[P]roof difficulties' are 'permissible factors' for a court to contemplate when evaluating the fairness of a settlement." *In re Pool Products Distribution Market Antitrust Litigation*, 310 F.R.D. 300, 316 (E.D. La. 2015) (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 240 (5th Cir. 1982)). Here, "[r]egarding liability, no claim is subject to a theory of *per se* illegality, which makes proof of [] [mis]conduct more difficult." *Id*. Under ERISA's "prudent man" standard (*Perkins*, 2024 WL 1574342, at *2), liability determinations would be subject to competing expert testimony on the prevailing standard of prudence and factual interpretations. *See In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 373 (S.D. Ohio 2006). If this Action were to go to trial, Defendant would assert multiple defenses arguing that it followed prudent processes and the Plan's recordkeeping fees were reasonable at all times, and lastly, the Plan did not suffer any losses. *See Baird v. BlackRock Institutional Trust Co. N.A.*, No. 17-cv-01892, 2021 WL 5113030, at *5 (N.D. Cal. Nov. 3, 2021) ("Even if the Plaintiffs were to

17

ultimately prevail on the issue of liability, they still expected Defendants to vigorously challenge the extent of liability."). Hence, "[e]stimating the range of possible recovery is not difficult. The lowest band is no recovery, after all legal challenges" and costs. *O'Donnell v. Harris Cnty., Texas*, No. 16-cv-1414, 2019 WL 4224040, at *12 (S.D. Tex. Sept. 5, 2019).

Considering the risk of no recovery, or materially reduced recovery, the 20-22% recovery of the potential damages as calculated by Plaintiffs falls within the range of fair, reasonable and adequate settlements. Plaintiffs initially estimated maximum potential damages to be at least $3.5 million to $4.0 million based on the Plan's recordkeeping and administrative fees *and* managed account fees which Plaintiffs believed overlapped with the recordkeeping and administrative fees. But Defendant strongly argued that the Plan was paying reasonable recordkeeping rates at all times and the account managed fees were separate and apart from the recordkeeping fees, and were regardless reasonable at all times. Thus, there was a risk Plaintiffs could not prove any loss amount even if they could prove liability, which Defendant also adamantly dispute.

In *Blackmon*, an analogous breach of fiduciary duty case from this Circuit, the court noted that a recovery of 14-23% of the plaintiffs' total estimated damages "exceeds many recoveries received in other class action cases." *Blackmon*, 2022 WL 3142362, at *4 (listing cases approving settlements as low as 2%); *see also Sims v. BB&T Corp.*, No. 15-cv-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving a recovery "represent[ing] 19% of the total investment and recordkeeping damages sought by the plaintiffs."); *Mehling*, 248 F.R.D. at 462 (finding the recovery representing 20% of estimated damages in ERISA class action approved was adequate); *Johnson v. Fujitsu Tech. & Business of America, Inc.*, No. 16-cv-03698, 2018 WL 2183253, at **6-7 (N.D. Cal. May 11, 2018) (approving a recovery representing "under 10% of the Plaintiffs' most aggressive 'all in' measure of damages" in an ERISA excessive fee case). Because Defendant made

18

no concessions regarding damages or liability, the Settlement also represents a 100% recovery if any of Defendant's arguments regarding damages or liability were to prevail in the long run. Thus, the range of recovery is fair, reasonable, and adequate.

> **5. Counsel for the Parties and Plaintiffs find the Settlement to be fair and adequate**

The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight." *Klein*, 705 F.Supp.2d at 649. "Because the court is to give significant weight to the opinion of class counsel, it is not routine for a court to overrule a decision that settlement is in the best interest of the class." *Id.* at 662. Indeed, counsel for both Parties "are skilled in class actions and ERISA litigation, and their recommendation that the Court should approve the Settlement is entitled to some deference." *Karpik,* 2021 WL 757123, at *6; s*ee also*, , 2021 WL 2414580, at *8 (appointing the undersigned as Class Counsel and finding that "[Capozzi Adler] represented that they possess prior experience litigating similar ERISA class actions and complex litigation. They appear well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement."). Additionally, this Settlement has "the approval of each Class Representative[,]" which weighs in favor of finding the proposed Settlement is fair, reasonable, and adequate. *Blackmon*, 2022 WL 3142362, at *4.

All of the *Reed* Factors weigh in favor of preliminarily approving the Settlement.

> **D. The proposed class notice plan should be approved by the Court**

As detailed in Section II.D. *supra*, the proposed Settlement Class notice plan calls for dissemination of notice through multiple channels: first class mail (with procedures for returned mail), email, creation of a website, and establishment of a toll-free number for members. The information provided informs Settlement Class members of their rights and procedures to object to the Settlement. The proposed Settlement Class Notice Plan is the best practicable plan under the

circumstances and warrants preliminary approval. *See*, *e.g.*, *Bardales v. Fontana & Fontana, LLC*, No. 19-cv-340, 2020 WL 5819873, at *13 (E.D. La. Sept. 30, 2020) ("The direct mailing of notice to potential class members by first class United States mail to the addresses provided by Defendants, as updated from an [] search by the settlement administrator, is reasonably calculated to apprise the potential class members of the settlement agreement."). Thus, the proposed Settlement Class notice plan should be approved.

## IV.    CONCLUSION

Plaintiffs respectfully request the Court grant their Motion for Preliminary Approval of Settlement and ask the Court to preliminarily certify a settlement class, and schedule a Final Approval Hearing. Plaintiffs propose the Final Approval Hearing be scheduled at least 90 days after entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. The proposed preliminary approval order sets forth the proposed schedule of events which are subject to the Court's approval.

Date: November 4, 2025                    Respectfully submitted,

                                          **CAPOZZI ADLER, P.C.**

                                          */s/ Mark K. Gyandoh*
                                          Mark K. Gyandoh, Esquire
                                          PA Attorney ID # 88587
                                          (*Admitted Pro Hac Vice*)
                                          James A. Maro, Esquire
                                          PA Attorney ID #86420
                                          (*Admitted Pro Hac Vice*)
                                          312 Old Lancaster Road
                                          Merion Station, PA 19066
                                          James A. Wells, Esquire
                                          PA Attorney ID #83517
                                          (*Admitted Pro Hac Vice*)

Email: markg@capozziadler.com
         jamesm@capozziadler.com
Telephone: (610) 890-0200
Fax: (717) 233-4103

Peter A. Muhic
**MUHIC LAW LLC**
923 Haddonfield Road
Suite 300
Cherry Hill, NJ  08002
 Email: peter@muhiclaw.com
Telephone: (856) 242-1802

**THE LAW OFFICE OF KELL A. SIMON**
Kell A. Simon
Texas Attorney ID # 24060888
501 N. Interstate Highway 35, Suite 11
Austin, Texas 78702
Email: kell@kellsimonlaw.com
Telephone: (512) 898-9019
Fax: (512) 368-9144

*Counsel for Plaintiffs and the Proposed Class*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  *<u>/s/Mark K. Gyandoh</u>*
      Mark K. Gyandoh, Esq.

22